UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARY J. COSTA | : | |
| | : | |
| v. | : | C.A. No. 08-395S |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on October 20, 2008 seeking to reverse the decision of the Commissioner. On July 14, 2009, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 11). On August 7, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 13).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the legal memoranda filed by the parties and independent legal research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED

and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 11) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on August 31, 2006, alleging disability since April 14, 2006.  (Tr. 158-168).  The applications were denied initially (Tr. 106-112) and on reconsideration.  (Tr. 96-105).  Plaintiff requested an administrative hearing.  (Tr. 119).  On April 11, 2008, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified.  (Tr. 41-89).  The ALJ issued a decision unfavorable to Plaintiff on May 23, 2008.  (Tr. 20-32).  The Appeals Council denied Plaintiff's request for review on August 21, 2008.  (Tr. 1-4).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 by not finding that her hip impairment was "severe" under 20 C.F.R. § 404.1520(c).  Plaintiff also contends that the ALJ did not accord proper weight to the opinion of her treating physician and misinterpreted the ME's testimony.

The Commissioner disputes Plaintiff's claims and argues that the ALJ properly evaluated the medical evidence and that his findings are supported by substantial evidence.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1ˢᵗ Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1ˢᵗ Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1ˢᵗ Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11ᵗʰ Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1ˢᵗ Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11ᵗʰ Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1ˢᵗ Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11ᵗʰ Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1ˢᵗ Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5ᵗʰ Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

### IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.  Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was forty-four years old on the date of the ALJ's decision.  (Tr. 158).  Plaintiff completed the ninth grade (Tr. 188) and has previous work experience in manufacturing as an assembler and machine operator.  (Tr. 184).  Plaintiff stopped working in April 2006 following complaints of pain in both hips and her left foot.  (Tr. 69, 326).  At the ALJ hearing, Plaintiff testified that she had not worked or applied for any jobs since that time.  (Tr. 68).  However, in her later application in this case to proceed in forma pauperis, which was signed on October 20, 2008, Plaintiff indicated that she was then employed and had started a part-time job at the Christmas Tree Shop a couple of weeks earlier.  (Document No. 2).  Plaintiff alleges disability due to hip problems, hearing loss, arthritis, bone problems, carpel tunnel syndrome, depression and a learning disability. (Tr. 45, 183).

On January 12, 2007, Dr. Steven Hirsch performed a consultative psychological evaluation of Plaintiff, who complained of depression, cognitive deficits and multiple physical problems.  (Tr. 274-278).  Upon exam, Plaintiff had an intact gait; functional memory; a limited general fund of

knowledge; the ability to focus, concentrate, and attend to questions; concrete thinking; mildly impaired to low-average cognitive skills; an appropriate affect; and good frustration tolerance. (Tr. 275). Doctor Hirsch diagnosed Plaintiff with a learning disorder and opined that she could attend to, and complete, everyday household tasks. (Tr. 277-278).

On January 23, 2007, Dr. MaryAnn A. Paxson, a Disability Determination Services (DDS) Psychologist, opined that Plaintiff suffered from a learning disorder that resulted in mild restrictions in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 280, 281, 290).

On March 13, 2007, Dr. Leslie Cronister, a DDS Physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and walk for at least two hours in an eight-hour workday; sit for six hours in an eight-hour work day; push and pull without limitation; frequently balance and kneel; occasionally climb, stoop, crouch, and crawl; and tolerate hazards on a less than concentrated basis. (Tr. 300-301, 303).

On March 13, 2007, Dr. Motasem Al-Yacoub, a Neurologist, saw Plaintiff, who complained of memory loss. (Tr. 307-309). Upon exam, Plaintiff had normal range of motion; no cyanosis, clubbing, or edema in the extremities; normal muscle bulk and tone, coordination, and sensation; full strength in the extremities; a slightly abnormal mini-mental status examination; a normal gait; and the ability to walk on the heels and toes. (Tr. 308). Dr. Al-Yacoub discussed a referral to a memory clinic with Plaintiff and opined that she did not have an organic/degenerative dementia but may be suffering from a learning disability since childhood. Id.

On August 17, 2007, Plaintiff was seen at Blackstone Valley Community Health Care, Inc. for complaints of stress.  (Tr. 410-411).  Upon exam, Plaintiff had an appropriate affect; a depressed mood; intact memory; an average intellect; a cooperative attitude; fair reasoning, impulse control, judgment and insight; a logical thought process; and unremarkable thought content.  (Tr. 410).  Her GAF was rated at 70 or mild symptoms.  Id. at 411.

On September 24, 2007, Plaintiff was seen by Dr. America Foster at Blackstone Valley Community Health Care, Inc. for complaints of back pain.  (Tr. 418-420).  Upon exam, Plaintiff had tenderness in the lumbar spine with mild pain upon range of motion.  (Tr. 419).  Plaintiff was diagnosed with back pain.  Id.

On November 14, 2007, Dr. Sreekala Vasudevan, a Rheumatologist, saw Plaintiff, who complained of pain in her joints, muscles and bones.  (Tr. 461-462).  Upon exam, Plaintiff had no synovitis, tenderness or swelling in the hands; tenderness in the upper back; good range of motion of the ankles; and normal toes.  (Tr. 462).  He did not make a definitive diagnosis.  Id.

On December 7, 2007, Plaintiff was seen at Blackstone Valley Community Health Care, Inc. (Tr. 437-438), for a medication review where, upon exam, she had no scoliosis in the spine; normal musculature; and no skeletal tenderness or joint deformity.  (Tr. 438).

On January 2, 2008, Dr. Vasudevan saw Plaintiff, who complained of shoulder pain.  (Tr. 457-458).  Upon exam, Plaintiff had tenderness in the left shoulder, with limited abduction and forward flexion and good rotation; good range of motion in the right shoulder; and no synovitis in the hands.  (Tr. 457).  He concluded that Plaintiff had "clinical features of lupus."  Id.

On February 8, 2008, Plaintiff was seen at Blackstone Valley Community Health Care, Inc. for complaints of stress.  (Tr. 448-449).  Upon exam, Plaintiff had an appropriate affect;

-13-

unremarkable psychomotor behaviors; a depressed mood; intact memory; an average intellect; a cooperative attitude; fair reasoning, impulse control, judgment and insight; a logical thought process; and unremarkable thought content.  (Tr. 449).  Her GAF was rated at 60 or moderate symptoms. Id.

On February 14, 2008, Plaintiff was seen at East Bay Neurology, P.C., and was diagnosed with improved headaches and controlled restless leg syndrome.  (Tr. 379).

On March 5, 2008, Dr. Foster opined that, from April 2006 to the present, Plaintiff could not perform sustained, full-time competitive employment.  (Tr. 468).

On March 12, 2008, Dr. Foster completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical), in which she opined that Plaintiff could lift and carry no amount of weight; sit for no more than three hours at one time and three hours total in an eight-hour workday; stand for no more than two hours at one time and two hours total in an eight-hour workday; walk for no more than one hour at one time and one hour total in an eight-hour workday; reach overhead, handle, finger, feel, push and pull occasionally; never operate foot controls, climb, balance, stoop, kneel, crouch or crawl; understand simple, oral instructions and communicate simple information; not avoid hazards in the workplace; never tolerate exposure to unprotected heights, moving machinery, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, vibrations, extreme cold and extreme heat; and not shop, travel without a companion, use standard public transportation or climb a few steps at a reasonable pace with the use of a single hand rail.  (Tr. 469-475).

On May 18, 2008, Dr. Jack D. Goldstein completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical), in which he opined that Plaintiff could lift and carry no

more than ten pounds occasionally; sit for no more than one hour at one time and four hours total in an eight hour workday; stand for no more than one hour at one time and two hours total in an eight-hour workday; walk for no more than one hour at one time and two hours total in an eight-hour workday; reach overhead, climb ramps and stairs, balance and stoop occasionally; reach in all other directions, handle, finger, feel, push, pull, and operate foot controls frequently; never climb ladders or scaffolds, kneel, crouch or crawl; understand simple, oral instructions and communicate simple information; avoid hazards in the workplace; occasionally tolerate exposure to unprotected heights, moving machinery, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat; and could not walk a block at a reasonable pace on a rough or uneven surface.  (Tr. 33-40).

### A.    The ALJ Erred by Failing to Expressly Consider Plaintiff's Hip Impairment at Step 2.

The ALJ decided this case adverse to Plaintiff at Step 4.  At Step 2, he found Plaintiff's hearing impairment, learning disorder, depression, unspecified immune system disorder and vasospasm of the hands, to be "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (Tr. 25).  He did not find any of these impairments, either individually or in combination, to meet a Listing.  (Tr. 26).  The ALJ assessed an RFC for a "significant range" of light work with certain environmental limitations and nonexertional limitations related to Plaintiff's hearing loss and her learning disorder.  (Tr. 27-31).  Light work is defined as requiring a "good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff could perform her past work as an assembler which was defined as light, unskilled work.  (Tr. 31).

-15-

Further, although the ALJ decided the case at Step 4, he noted as an alternative that, if Plaintiff's RFC did preclude her ability to work as an assembler, there were a significant number of jobs, such as food preparation, that Plaintiff remained able to perform. (Tr. 31). In other words, the ALJ appears to make an alternative Step 5 finding adverse to Plaintiff. Id.

Plaintiff argues that the ALJ erred by not finding her hip disorder to be a severe impairment at Step 2 despite evidence that her hip pain precluded extended standing or walking. (Document No. 11 at pp. 6-9). At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. "The step two inquiry is a de minimis screening device used to dispose of groundless or frivolous claims." Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)); see also Lisi v. Apfel, 111 F. Supp. 2d 103, 110 (D.R.I. 2000).

Here, the ALJ did not discuss Plaintiff's hip impairment at Step 2. He made specific findings as to nine physical and mental impairments. He found five to be "severe" impairments and explained why, and found that four did not create "significant vocational limitations" and were not "severe" impairments. (Tr. 25-26). Notably absent is any mention of the hip impairment one way or the other. While it is not reasonable to require an ALJ to evaluate each and every possible impairment, no matter how remote, mentioned in a body of medical records, the hip impairment was prominent in the record in this case.

-16-

In her initial disability report dated September 8, 2006, Plaintiff reported a "problem with both hips" and that she was "unable to tolerate pain unable to sit and stand for long period of time." (Tr. 183). She also reported in a function report dated September 19, 2006 that she was unable to complete household chores due to hip pain. (Tr. 190). The medical records also contain numerous references to hip pain and hip dysplasia. For instance, Plaintiff's treating orthopedist, Dr. Goldstein, examined Plaintiff on April 12, 2006 and found her "positive for hip pain." (Tr. 262). He indicated that a hip x-ray showed mild dysplasia (a deformity or misalignment of the hip joint) and an MRI showed a "thickened lubrum which is consistent with the mild dysplasia." (Tr. 263). He diagnosed Plaintiff with "arthritis, osteoarthritis, hip [715.15] right and left from mild dysplasia." (Tr. 264). More recently, on May 18, 2008, Dr. Goldstein completed an RFC statement as to Plaintiff which he indicated was supported by "XR [x-ray] of hips." (Tr. 39). He also opined that Plaintiff had "limited ambulatory tolerance" due to early hip arthritis and lumbar spondylitis. (Tr. 40). Further, Dr. Cronister, a reviewing ME, completed a physical RFC assessment on March 13, 2007 which identified Plaintiff's primary diagnosis as "B/L [bilateral] hip pain." (Tr. 299). Finally, the October 11, 2007 decision of the "Federal Reviewing Official" (Ex. 5A) found at Step 2 that Plaintiff's hip dysplasia and osteoarthritis in both hips were "severe medically determinable impairments." (Tr. 100-101).

Defendant argues that "no error resulted from the ALJ's step two finding" because he actually considered Plaintiff's hip disorder to be a "severe" impairment. (Document No. 13 at p. 9). The record does not support Defendant's argument. Defendant points out that the ALJ's Step 2 discussion "explicitly provided that Plaintiff experienced joint and muscle pain." Id. However, Defendant's surgical quotation omits the ALJ's qualification that such pain is "most notably in the

hands and shoulders." (Tr. 26). Thus, it is a bit of a stretch to extend that sentence to consideration of Plaintiff's hip impairment. Defendant cites <u>Newman v. Astrue</u>, No. 5:06-CV-0955, 2008 WL 4298550 at *16 (S.D. W.Va. Sept. 18, 2008), as further support. However, that case is distinguishable as it involved a complicated case involving numerous medical impairments and essentially a scrivenor's error. The Court agreed that the record supported a finding that "the ALJ <u>inadvertently</u> excluded the disorder [in issue] from his formal list of severe impairments." <u>Id.</u> (emphasis added). Defendant has not provided any reasonable basis in this case for a finding that the ALJ's failure to identify the hip impairment at Step 2 was inadvertent.

Defendant also claims that there was not any Step 2 error because "at Step three, the ALJ, in turn, proceeded to consider whether the pain in Plaintiff's hip joints individually met or equaled an impairment contained in the listings." (Document No. 13 at p. 9). This argument is also unsupported by the record. At Step 3, the ALJ noted that "[w]hile the claimant experiences widespread joint pain, the evidence does not establish that [Plaintiff's] condition is attended by the specific clinical signs and diagnostic findings required to meet or equal" Listing 1.04 (Disorders of the Spine) or Listing 1.02 (Major Joint Dysfunction). (Tr. 26). While Listing 1.02(A) applies to major peripheral weight-bearing joints such as hips or knees, Listing 1.02(B) applies to major peripheral joints in the upper extremity such as shoulders or wrist-hand. The ALJ does not specify if he was applying Listing 1.02(A) or (B), or both. It is simply too much of a stretch to infer from the ALJ's Step 3 reference to Listing 1.02 that he found Plaintiff's hip impairment to be "severe" at Step 2 and considered it at Step 3 as well. This is particularly so when the ALJ does not use the words hip or dysplasia at all in his Step 2 or 3 discussions. Further, the ALJ indicates at Step 2 that

Plaintiff's joint and muscle pain is "most notably in the hands and shoulders" suggesting that he applied Listing 1.02(B) at Step 3.

For the foregoing reasons, I conclude that the ALJ erred on the unique facts of this case by failing to expressly discuss and evaluate Plaintiff's hip impairment at Step 2.  While the final outcome may well remain the same, the record is not clear enough to support Defendant's arguments and reach a harmless error conclusion.

**B.      The ALJ's Interpretation of the ME's Testimony is not Supported by the Record**

In discussing Plaintiff's RFC, the ALJ indicates that the ME, Dr. Kaplan, "concurred" that Plaintiff was able to perform a wide range of light work as opined by Dr. Cronister.  (Tr. 30). Defendant concedes that this was not an accurate restatement of the ME's testimony and agrees that the ME did not "explicitly testify that he concurred with an opinion that Plaintiff could perform a wide range of light work."  (Document No. 13 at p. 19).  Defendant argues, however, that there is no error because the ME "implicitly rendered such an opinion."  Id.  While it may well have been the ME's opinion that Plaintiff was capable of light work, he never specifically offers that opinion as stated by the ALJ.  The ALJ asked the ME for his assessment of Plaintiff's RFC.  (Tr. 51).  In response, the ME responded with a vague narrative mentioning Plaintiff's hearing limitations, learning disorder and concerns regarding exposure to sun due to a skin problem and exposure to extreme cold due to vasospasm in her hands.  (Tr. 51-52).  The ME gave no indication as to what level (sedentary, light, medium or heavy) of physical work Plaintiff could perform.  Defendant invites me to consider the context of the ME's testimony and to find that a light duty RFC assessment was "implicit" in his testimony.  In other words, an invitation to read the ME's mind and to conclude that he would have agreed with the ALJ's RFC assessment.  Again, this is simply too

much of a stretch on this record.  The ME's answer (Tr. 50-51) should have triggered follow-up questions to clarify the record.  For instance, based on the records you reviewed, is Plaintiff capable of performing work at the light exertional level?  Do you agree with Dr. Cronister's opinion (Ex. 13F) that Plaintiff retained the RFC to perform a wide range of work at the light exertional level? Those or similar questions were not asked, and the record is not sufficiently developed for me to ascertain the ME's RFC opinion by implication.  Thus, there is not substantial evidence to support the ALJ's characterization of the ME's testimony which the ALJ then used to support his RFC assessment.  I recommend that the case be remanded to either allow, as appropriate, the ALJ to clarify his RFC evaluation or to further develop the record regarding expert opinion testimony on the RFC issue.

### C.    Opinions Reserved to the Commissioner Under 20 C.F.R. § 404.1527(e)

In his opinion, the ALJ gave little weight to an opinion (Ex. 33F) and an RFC statement (Ex. 34F) rendered by Plaintiff's treating physician, Dr. Foster, in the weeks shortly before the ALJ hearing.  Plaintiff challenges the ALJ's conclusion that Dr. Foster's opinions were not supported by the record and that such opinions were on issues reserved to the Commission under 20 C.F.R. § 404.1527(e).

Since I have concluded that Plaintiff's primary arguments require a remand order, I would not normally invest the time to consider other less compelling arguments.  However, in this case, Plaintiff's second argument that the ALJ misapplied 20 C.F.R. § 404.1527(e) merits discussion.

In Gadoury v. Astrue, No. 08-140S, 2009 WL 2762504 (D.R.I. Aug. 27, 2009), District Judge Smith recently held that 20 C.F.R. § 404.1527(e) should be read narrowly and that all other treating source opinions should be evaluated by the ALJ under the "good reasons" framework of 20

C.F.R. § 404.1527(d)(2).  Basically, Section 404.1527(e)(1) provides that medical source opinions on dispositive issues, such as an opinion that a claimant is "disabled" or "unable to work," are not medical opinions.  See Griner v. Astrue, No. 3:08-CV-770, 2009 WL 2151204 (M.D. Fla. July 13, 2009).

In this case, Plaintiff argues that the ALJ misapplied Section 404.1527(e)(1).  Plaintiff is incorrect as a matter of both law and fact.  There are two opinions of Dr. Foster in question.  The first (Ex. 33F) simply concludes in one short sentence that Plaintiff is unable to work.  (Tr. 468). The ALJ concluded, correctly so, that Dr. Foster's opinion that Plaintiff is "unable to sustain full-time, competitive employment" is on an issue reserved to the Commissioner and is not a medical opinion.  (Tr. 30).  Plaintiff misconstrues the ALJ's position as to the second RFC opinion.  (Ex. 34F).  The ALJ did not apply § 404.1527(e)(1) to the second opinion.  (Tr. 30).  Rather, he concluded that Dr. Foster's opinion on Plaintiff's physical ability to do work-related activities was "inconsistent with the aforementioned examination and treatment notes."  Id.  In other words, the ALJ did not reject it as an opinion on an issue reserved to the Commissioner.  Consistent with § 404.1527(d)(2), the ALJ articulated reasons for his decision to give "little weight" to the opinion. Thus, the ALJ did not misapply § 404.1527(e).

.  **VI.   CONCLUSION**

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 11) be GRANTED.  I further recommend that the District Court enter Final Judgment in favor of Plaintiff remanding this case for additional administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond                            
LINCOLN D. ALMOND
United States Magistrate Judge
September 28, 2009